S. Richard BAUMAN, Complainant-
Appellant,

v.

Eulyse M. SMITH et al., Defendants-
Appellees.

Court of Appeals of Tennessee,
Western Section.

Jan. 17, 1972.

Rehearing Denied Feb. 28, 1972.

Certiorari Denied by Supreme Court
June 19, 1972.

**936**

Watson & Knolton, Memphis, for complainant-appellant.

Thomas R. Prewitt, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, for defendants-appellees.

CARNEY, Presiding Judge.

The complainant below, S. Richard Bauman, has appealed from a decree of the Chancery Court dismissing his original bill against the defendants, Eulyse M. Smith, James B. Cartwright, and Arnold M. Weiss, in which he sought a money judgment for services rendered on a quantum meruit basis. Complainant Bauman, defendants Eulyse M. Smith, James B. Cartwright, and Arnold M. Weiss, in February, 1968, formed a partnership for the purpose of constructing a high-rise apartment building located at 232 South Highland, Memphis, Shelby County, Tennessee.

Complainant Bauman had been the moving spirit in procuring the land and making tentative arrangements for rezoning of the property and temporary financing. For lack of adequate financing he formed the partnership with the defendants, Smith, Cartwright, and Weiss. Connecticut General Life Insurance Company made a commitment to carry the permanent financing of the building. The parties were without funds for temporary financing. Application was made by the partnership for a temporary construction loan from First National Bank of Memphis, Tennessee. The bank expressed interest in temporary financing of the construction but refused to advance the funds so long as the complainant Bauman was interested in the partnership because Bauman was heavily indebted to the First National Bank for financing of a Howard Johnson Motel which was nearly complete in the City of Memphis.

It was then agreed between the complainant and the defendants that the complainant would assign all of his right, title and interest in the partnership to the three defendants who would form a new partnership. After the First National Bank was paid off and had no further interest in the project, the defendants would then reassign to the complainant a one-fourth interest in the partnership without additional cost to the complainant. The assignment was made on or about March 13, 1968. First National Bank advanced temporary financing for construction and complainant continued rendering services to the three-party partnership in anticipation of his being taken back into the partnership following liquidation of the debt to First National Bank.

Complainant continued as agent for the partnership, negotiated with general contractors, architects, plumbing contractors, negotiated leases with prospective tenants, hired a resident manager; designed the operating budget and set up the necessary bookkeeping procedures for the partners. Disputes arose between the complainant on the one hand and the three defendants on the other relative to his activities in behalf of the apartment project.

The defendants insisted upon the complainant putting up additional capital if he insisted upon being readmitted to the partnership. When the complainant refused to put up additional capital, the defendants issued an ultimatum to him to stay away from the premises. The complainant com-

plied. After the temporary financing to the First National Bank was paid off, the complainant again sought readmission to the partnership as per the original agreement but was refused.

The complainant then filed his suit in the present cause seeking a money judgment for the reasonable value of the services rendered to the three defendants following the assignment of his interest in the partnership of date March 13, 1968. Trial was held before a jury and the jury found in favor of the complainant with reference to Issue No. I. The effect of this finding was that the four parties did orally agree at the time of the assignment on March 13, 1968, that the complainant's 25% interest in the partnership would be reassigned to him, without additional cost to him, when the First National Bank's temporary loan was paid off and the permanent loan was closed.

His Honor the Chancellor refused to submit Issue No. II proposed by the complainant which was as follows:

"If your answer to Issue No. 1 is 'yes' state the reasonable value of the services rendered by complainant, if you find he rendered services in behalf of the partnership, subsequent to March 13, 1968."

The defendants contended that the agreement with the complainant was that he would have a right to come into the venture or an option to come back into the partnership by matching or coming up with his pro rata share of contributions made by the other parties. They admitted that under the agreement complainant Bauman was to continue to render services to the three defendants.

Defendants objected to the submission of Issue No. II on the ground that the complainant had an express contract for services to be rendered though they did not agree as to the specific terms of the contract and, therefore, he was not entitled to recover on a quantum meruit basis.

The Chancellor ruled in favor of the defendants and refused to submit special request No. 2. The defendants made a motion that the Court notwithstanding the verdict of the jury on Issue of Fact No. 1 render final decree in favor of the defendants because under the pleadings, proof and theory of the complainant, complainant was entitled to no relief and that the verdict of the jury could not form the basis for any decree.

In complainant's original bill he had averred the reasonable value of his services rendered to the partnership to be the sum of $35,000. He prayed for a money judgment in an amount not to exceed $35,000 and that he have "such other relief, both general and special, to which he may be entitled." His Honor the Chancellor rendered a memorandum opinion in which he stated that the complainant could not be awarded damages for breach of contract because the complainant had not proven nor sought the award of damages.

The Chancellor stated that he could not grant specific performance because a partnership is the result of a voluntary agreement of the parties and does not result by operation of law, citing DuPont Rayon Co. v. Roberson, 12 Tenn.App. 261; Payne v. Fowler, 12 Tenn.App. 449. On the authority of Cultra v. Douglas (1969), 60 Tenn. App. 116, 444 S.W.2d 575, His Honor the Chancellor refused to grant specific performance of the contract which the defendants had breached.

On the authority of Robinson v. Durabilt Mfg. Co., (1953), 195 Tenn. 452, 260 S.W.2d 174, and Capps v. Groseclose (1895), 95 Tenn. 329, 32 S.W. 199, the Chancellor held that the complainant had no right to recover in quantum meruit or on the basis of a contract implied in law where the parties had an express contract. The Chancellor sustained the defendants' motion for a decree notwithstanding the verdict of the jury and dismissed the complainant's original bill with prejudice.

By proper assignments of error the complainant insists in this Court that His Honor the Chancellor was in error in refusing to submit Issue No. II to the jury to determine the value, if any, of services rendered by the complainant to the defendants and in granting defendants' motion for a decree notwithstanding the verdict of the jury on Issue No. I.

In our opinion these assignments of error are well-taken and the judgment of the lower Court must be reversed. The Chancellor approved the finding of the jury that the defendants had agreed to reassign to the complainant a 25% interest in the partnership without additional cost to him after First National Bank's temporary loan had been paid off and the permanent loan closed. The proof is uncontradicted that the defendants accepted the continuing services of the complainant and then breached their contract to readmit him to the partnership.

It is the general rule that upon the breach of a contract the injured party may, by election, rescind and recover the value of any performance by him, or he may stand by the contract and recover damages for the breach. 17 Am.Jur.2d, Contracts, Section 445, Available and Alternative Remedies, page 904; 17 Am.Jur.2d, Contracts, Section 519, Recovery by Rescinding Party, page 1007.

From 98 C.J.S. Work and Labor § 31, Rescission of Contract, we copy as follows:

" . . . (1) In General

Where an express contract has been rescinded, one furnishing labor or materials in part performance may recover in quantum meruit or quantum valebat, but such relief will be denied where the original contract remains in force.

One furnishing labor or materials in part performance of a contract may recover in quantum meruit or quantum valebat where an express contract relative thereto has been rescinded, terminated by the recipient without fault of the performer, or rescinded, terminated, or abandoned by mutual consent. Recovery as on a quantum meruit will be denied where the claim of rescission or abandonment is not substantiated and the original contract remains in force, or where plaintiff lost his right of rescission through failure to exercise it in due time. . . ."

In the case of Sadler v. Middle Tennessee Electric Membership Corp., (1952), 36 Tenn.App. 495, 259 S.W.2d 544, this Court, speaking through the late and lamented Judge Roy Hickerson, recognized the rule that even a plaintiff who has himself breached the contract may under some circumstances recover from the other party on a quantum meruit basis the value of benefits conferred on such other parties by partial performance—these benefits being accepted and retained, citing National Life and Accident Co. v. Hamilton, 170 Tenn. 612, 98 S.W.2d 107. However, in the Sadler case the Court of Appeals denied the plaintiff relief because the plaintiff corporation, Sadler Electric Company, had failed to show the value of the work which it actually did.

The principal case of Capps v. Groseclose, (1895), 95 Tenn. 329, 32 S.W. 199, cited and relied upon by the Chancellor is not controlling of the case at bar because in the Capps case the plaintiff proved a contract under which he was entitled to receive only a horse, bridle and saddle for his services and he had never made demand for such articles nor did he sue for the same. In the case at bar the complainant Bauman did make demand that he be readmitted to the partnership under the terms of the agreement after performance on his part and the defendants breached the contract and failed to perform and failed to make restitution to the complainant.

We have studied the case of Robinson, et al., v. Durabilt Mfg. Co., (1953), 195 Tenn. 452, 260 S.W.2d 174, also cited by the Chancellor in his memorandum opinion.

In our opinion the Robinson case is not controlling of the case at bar because in the Robinson case, opinion by Justice Tomlinson, the Supreme Court found that it was part of the express agreement between the parties that the plaintiff Robinson was obligated to pay all the costs of selling or promoting the crop drier machines manufactured by Durabilt with no right of reimbursement by Durabilt and that Robinson alone decided what expenses he would incur. The Supreme Court further recited that either party to the contract had a right to terminate the contract at will; that Robinson was not bound to sell any number of machines nor was Durabilt obligated to furnish him any specific number. Thereafter, Durabilt terminated its contract with Robinson as it had a legal right to do and contracted with another agent to sell its products in Mississippi. Justice Tomlinson stated that even though theoretically Durabilt did receive some benefit from advertising which Robinson had done of his own volition, the Court would not construct a contract between the parties whereby Durabilt would be required to pay for such benefits.

In the case of Paschall's, Inc. v. Dozier, (1966), 219 Tenn. 45, 407 S.W.2d 150, our Tennessee Supreme Court held that the complainant buildings material dealer, Paschall's, Inc., who had constructed a bathroom in the defendant Dozier's home was entitled to recover the enhanced value received by the defendant even though the defendant had not contracted for such improvement and the contract was between the buildings material dealer and the children of the homeowners. Because of the bankruptcy and insolvency of the children the materialman was unable to collect his money from them and brought his suit on the theory of unjust enrichment. From Chief Justice Burnett's opinion we quote as follows:

"The law recognizes two distinct types of implied contracts; namely, contracts implied in fact and contracts implied in law, commonly referred to as quasi contracts. The distinction between the two has been explicitly stated by the Court of Appeals in Weatherly v. American Agr. Chemical Co., 16 Tenn.App. 613, 65 S. W.2d 592:

'Contracts implied in fact arise under circumstances which, according to the ordinary course of dealing and common understanding of men, show a mutual intention to contract. Such an agreement may result as a legal inference from the facts and circumstances of the case. * * * "Contracts implied in law, or more appropriately, quasi or construction contracts, are a class of obligations which are imposed or created by law without the assent of the party bound, on the ground that they are dictated by reason and justice * * *." '

Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto."

The prevailing rule is clearly and concisely stated by Professor Corbin in his very fine work on contracts from which we quote as follows:

"Sec. 1109. Restitution of the Value of Goods Sold or of Work and Labor Done

One who has rendered service or supplied work, labor, and materials under a contract with another, but who has been wrongfully discharged or otherwise prevented from so far fully performing as to earn the agreed compensation, may regard the contract as terminated and get judgment for the reasonable value of all that the defendant has received in performance of the contract. This rule

is applicable to contracts of personal service and to all kinds of construction contracts. The defendant's breach may have been a repudiation, a discharge, a prevention of performance by the plaintiff, or a failure to perform the agreed exchange due from the defendant.

\*     \*     \*     \*     \*     \*

"Sec. 1113. Effect of the Contract Price or Rate on the Measure of Recovery

It has already been stated that, when the plaintiff is given the alternative remedy of restitution, the amount of his recovery is determined by the value of the performance that has been received by the defendant, and not by the value of that which was promised by the defendant. No one doubts, however, that the contract price or rate agreed upon by the parties is admissible in evidence to show what is the reasonable value of the performance that the defendant has received. There are many elements that enter into the making of an agreement fixing a contract price; and the price so fixed may be very different from the market value of from what is often described as 'reasonable value.' The price or rate fixed in the contract, therefore, although admissible in evidence in an action for restitution, is not conclusive on the question of value as against either the plaintiff or the defendant. \*  \*  \*"

A study of the complainant Bauman's bill in the present cause reveals that he has, in effect, elected not to sue for specific performance of the contract and elected not to sue for damages for breach of contract but that on the contrary he has elected to treat the contract as rescinded and has sued on a quantum meruit theory for services rendered and received by defendants. Under the authorities above cited this he had a right to do.

We hold that the defendants are liable to the complainant for the value of the services rendered them by complainant after March 13, 1968. The decree of the Chancellor is reversed and the cause will be re-manded for determination of the value of such services in accordance with this opinion.

The defendants are taxed with costs accrued to this date. The costs upon remand will abide the decree of the Court below.

MATHERNE and NEARN, JJ., concur.

PETITION TO REHEAR DENIED

CARNEY, Presiding Judge.

On January 17, 1972, this Court rendered an opinion reversing the lower Court and remanding the cause for a new trial on the sole issue of the value of services rendered by the complainant, S. Richard Bauman, to the defendants, Eulyse M. Smith, James B. Cartwright, and Arnold M. Weiss. The defendants, Eulyse M. Smith, et al., have filed a petition to rehear in which our attention was called to T.C.A. Section 21–1011 which is as follows:

"21–1011. Right to trial by jury.—Either party to a suit in chancery is entitled, upon application, to a jury to try and determine any material fact in dispute, save in cases involving complicated accounting, as to such accounting, and those elsewhere excepted by law or by provisions of this Code, and all the issues of fact in any proper case shall be submitted to one jury."

Also our attention was directed in said petition to the cases of Buchanan v. Gower, 7 Civ.App. Cases (Higgins) 306; Minton v. Wilkerson, 133 Tenn. 484, 182 S.W. 238; and Wright v. Jackson Construction Co., 138 Tenn. 145, 196 S.W. 488; and to Section 589 of Gibson's Suits in Chancery, 5th Edition.

■ In Tennessee there is neither constitutional nor common law right to trial by jury in equity cases. Hunt v. Hunt, 169 Tenn. 1, 80 S.W.2d 666; Harbison v. Briggs Bros. Paint Mfg. Co., (1962), 209 Tenn. 534, 354 S.W.2d 464; Greene Coun-

ty Union Bank v. Miller, 18 Tenn.App. 239, 75 S.W.2d 49.

It is only by statute 21-1011 quoted above that parties are given the right to jury trials in equity cases "to try and determine any material fact in dispute."

■ Whenever a jury trial is granted in Chancery Court under T.C.A. Section 21-1011, the fact issues are tried according to the forms of law and the jury verdict has the same force as at law. T.C.A. Section 21-1016; Davis v. Mitchell, 27 Tenn.App. 182, 178 S.W.2d 889. Prior to the enactment of 21-1011 a jury trial could be had only in the discretion of the Chancellor, was advisory only and upon appeal the case was tried do novo. Gibson's Suits in Chancery, 4th Edition, Section 554a and Section 1269d(3).

■ The right of a party to a trial by jury in the Chancery Court is not unlimited and the Chancellor may refuse to submit issues that are of a complicated nature but his action in refusing to submit issues to the jury is subject to review. Arrants v. Sweetwater Bank & Trust Co., (1965), 55 Tenn.App. 631, 404 S.W.2d 253.

■ In the case of Perkins v. Brown, (1915), 132 Tenn. 294, 177 S.W. 1158, our Tennessee Supreme Court held that in a law case an appellate court could limit the issues for retrial on remand. The practice of remanding law cases for trials solely on the question of damages is clearly established by the case of Acuff v. Vinsant, 59 Tenn.App. 727, 443 S.W.2d 669.

In the case of Wright v. Jackson Construction Co., 138 Tenn. 145, 196 S.W. 488, our Tennessee Supreme Court held that where a Chancellor granted a new trial as to some but not all of the issues of fact tried to a jury in Chancery Court, he was in error, and that having granted a new trial as to some issues it was mandatory that the case be retried on all issues of fact. However, in the Wright case our

Tennessee Supreme Court made this very salient statement:

"It may be that this court, in the exercise of its appellate jurisdiction, when we can clearly see that a due administration of justice requires it, as was done in a recent law case (Perkins v. Brown, 132 Tenn. 294, 177 S.W. 1158, L.R.A., 1915F, 723, Ann.Cas., 1917A., 124), can approve the verdict on one issue, and so remove it from the field of controversy, and remand for a new trial on the other, or others, in a chancery cause; but such a case is not before us, at this time, and we do not now decide it."

T.C.A. Section 21-1016 provides as follows:

"The trial shall be conducted like other jury trials at law, the finding of the jury having the same force and effect, and the court having the same power and control over the finding, as on such trials at law."

■ We construe the words in T.C.A. Section 21-1011 "and all the issues of fact in any proper case shall be submitted to one jury" to be part of a legislative intent to make jury trials in Chancery Court, with exceptions noted in said statute, conform to the practice at the common law, to-wit, in jury trials at common law all issues of fact must be submitted to one jury and the case not tried piecemeal. There is nothing in T.C.A. Section 21-1011 or companion sections which indicate legislative intent to give a litigant greater rights by jury trial in Chancery Court than litigants have by jury trial at the common law.

■ We think this is a proper time and case to follow the suggestion contained in the quotation from Wright v. Jackson Construction Co., supra.

In the case at bar the Chancellor approved the finding of the jury that the defendants breached their contract with the complainant. We hold that prompt and ef-

ficient administration of justice requires that this issue of fact be removed from the field of controversy and the cause remanded for a determination of the value of the services rendered by the complainant to the defendants in accordance with our opinion announced of date January 17, 1972.

Petition to rehear is denied at the cost of appellees.

MATHERNE and NEARN, JJ., concur.