IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 6, 2010 Session

# DILLARD CONSTRUCTION, INC. v. HAVRON CONTRACTING CORP.
## ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 08-0319     W. Frank Brown, III, Chancellor**

**No. E2010-00170-COA-R3-CV - FILED NOVEMBER 23, 2010**

The only parties left litigating in what started out as a complex construction dispute are, on one side, Dillard Construction, Inc[1], and, on the other, Dillard's demolition subcontractor, Havron Contracting Corp.  After a bench trial and several post-trial motions, the court held that (1) Dillard, while not having a contract with Havron, was required by quantum meruit to pay Havron $91,100 for work performed by Havron's subcontractors; (2) Dillard was not entitled to an offset against that judgment for damage done to electrical equipment by Havron's subcontractor; (3) Havron was entitled to recover from Dillard, under a "pass-through" indemnity theory, the attorney's fees awarded against Havron and in favor of its subcontractor; and (4) Havron was not entitled to recover the attorney's fees that it, Havron, incurred in defending against the claims of its subcontractor.  Dillard appeals challenging both the quantum meruit award and the denial of an offset.  Havron challenges the trial court's denial of indemnification for attorney's fees Havron incurred in defending the claims of its subcontractor.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

---

[1]The bonding company – International Fidelity Insurance Company – that posted a bond on behalf of Dillard to remove a lien on the property where the demolition work was being done is also a party.  Fidelity's interests are identical to Dillard and both are represented on this appeal by the same attorneys.  For simplicity, we will refer to both parties as "Dillard."

Everett L. Hixson, Jr., and Adam U. Holland, Chattanooga, Tennessee, for the appellants, Dillard Construction, Inc., and International Fidelity Insurance Company.

C. George Caudle, Chattanooga, Tennessee, for the appellee, Havron Contracting Corp.

**OPINION**

I.

At an earlier time, there were a number of parties in this case and various cross-claims, counterclaims, and third-party claims. Many of these claims have been resolved and we are now focused only on the claims between Dillard and Havron.

The basic facts that give rise to this dispute are fairly simple. Dillard contracted with a property owner to relocate an industrial plant. Havron had bid on the same project, but the owner chose Dillard. Havron specialized in demolition rather than "building" and was therefore hired by Dillard to perform much of the demolition work on the project. The work specifically at issue here is the demolition of "Bay 8." After demolition work began on Bay 8, Dillard and Havron exchanged documents concerning the work on Bay 8, but the trial court correctly found that the exchanges were only offers and counteroffers with no meeting of the minds. That finding is not at issue on appeal. What the "minds" of the two parties never met on was the demolition of the *roof* of Bay 8. Havron had priced demolition of "sandwich panels" and "structural steel" for the sum of $63,100. According to Havron, this price did not include the roof, but, according to Dillard, it did include the roof as part and parcel of the structural steel demolition. Significantly, the proof at trial was that the term "structural steel" has a specific meaning in the construction industry that does not include the roof of a structure.

On December 4, 2009, Dillard's project manager, Kemp, instructed Havron to start the demolition of Bay 8, beginning at the northeast corner. Kemp stated that the work needed to start "yesterday." This was after a brief walk through that did not include all of Bay 8 and, as we have stated, before an agreement could be finalized.

Havron is a supervising contractor that does not have its own work crews. Havron hired Sitton Construction, LLC to begin the demolition of Bay 8. Sitton began its demolition work on a "lean-to" structure in which electrical components, including switchgear, were located. In the course of the demolition of the lean-to, Sitton damaged the switchgear. This did not sit well with the owner because the owner had planned to reuse the switchgear. Dillard informed the owner that it would do whatever it took to make the owner whole. Dillard instructed Havron to terminate Sitton. Havron did as instructed and almost

immediately contracted with Paul Hutcherson dba H&S Construction, which will be referred to herein as "H&S," to perform the work started by Sitton.

As work progressed, a disagreement between Dillard and Havron as to the scope of the work came to light. Dillard insisted that the structural steel component of demolition included the roof. Havron insisted that roof removal was an extra that was not included in the price of $63,100. H&S concurred with Havron that roof removal was extra work H&S had not agreed to perform. Dillard insisted that the roof be removed. Havron gave H&S a change order adding a payment of $21,100 for removal of the roof, which, coincidentally, brought H&S's total contract amount with Havron to Havron's initial price to Dillard of $63,100. Havron added approximately $7,000 profit and billed Dillard $28,000 for roof removal and $63,100 for sandwich panel and structural steel demolition for a total of $91,100.

The property owner secured replacement switchgear at a total cost of $72,688. Dillard agreed with the owner that the cost of the replacement switchgear should be deducted from Dillard's contract price. Dillard then tried to pass the cost of the new switchgear on to Havron. Dillard took the position that Havron was responsible for the full cost of the replacement switchgear; it refused to pay Havron for the demolition work. Dillard also stood by its claim that the roof was included in the structural steel demolition and that Havron was not entitled to extra pay for the roof, beyond the original $63,100 price. Havron filed a lien against the property in the amount of $91,100. Havron refused to pay H&S until Dillard paid Havron. Havron relied on a "pay when paid" clause in its contract with H&S. H&S then filed a lien against the property in the amount of $63,100. Dillard secured a bond from International Fidelity Insurance Company to discharge the liens.

Almost every person or entity in the chain between the property owner and H&S, including the bonding company, sued every other person or entity in the chain on a variety of theories. Included was a claim under the Tennessee Prompt Pay Act, Tenn. Code Ann. § 66-34-101 *et seq*. (2004 & Supp. 2009), by H&S against Havron and Dillard. The bench trial lasted two days and was successful in resolving much of the case. After the trial, but before the court decided the case, Havron moved to amend its claim against Dillard to include a claim for indemnity in the event Havron were held liable to H&S. The trial court allowed the amendment to conform to the evidence. Four aspects of the trial court's final judgment are implicated in this appeal. They are: (1) that there was no meeting of the minds to support a contract between Havron and Dillard but that Havron was entitled to a quantum meruit recovery against Dillard in the amount of $91,100, plus interest;(2) that Dillard was not allowed to deduct the cost of the switchgear from the amount owed Havron; (3) that Havron was responsible for H&S's attorney's fees under the Prompt Pay Act; and (4) that Havron was entitled to be indemnified by Dillard for its payment of H&S's attorney's fees

but not for Havron's own attorney's fees. The trial court's findings and analysis as to each of these points, in a well-reasoned opinion, are as follows:

> H&S seeks to recover its reasonable attorney's fees and interest pursuant to the Prompt Pay Act of 1991, Tenn. Code Ann. § 66-34-101 *et seq.* . . .
>
> \* \* \*
>
> There was no trial exhibit introduced whereby anyone responded to H&S's claim and provided a reason for nonpayment. However, at trial on redirect of Mr. Havron, Havron defended its non-payment of H&S based upon a "pay when paid clause" in their subcontract agreement. . . . The . . . document reads as follows:
>
>> Payment in full within ten days receipt of full payment by Havron, which shall be billed to Owner upon completing of the work and which shall become due 30 days from the date of such billing to Owner.
>
> The . . . [a]greement . . . was not signed until after H&S comp[l]eted all of the work required . . . . Therefore, this "pay when paid" provision was not part of the original agreement and has no effect. . . .
>
> \* \* \*
>
> Based upon Tenn. Code Ann. § 66-34-602(b), H&S is able to recover its reasonable attorneys fees from Havron, its contractor. . . . An award of $23,385.52 is reasonable under the facts of this case.
>
> H&S also alleged that Havron breached the duty of good faith and fair dealing. . . .
>
> \* \* \*

Here, the aspect of the case that deals with good faith and fair dealing relates to the payment from Havron to H&S. Havron hired H&S to do the work Sitton had previously agreed to do. Havron sent H&S a letter of intent stating that the contract price would be $42,000. The parties' subsequent, written agreement also contained the same sum. There was a compressed time schedule to be met. Havron contracted with H&S after Havron knew there could be a claim from [Dillard] or [the owner] regarding the damaged switchgear. Havron's contractual clauses containing the pay when paid clause were presented to H&S after H&S's work was completed. Thus, the after-the-fact contract terms should not be able to defeat H&S's legitimate claims for payment for work well done. The "pay when paid" clause was not part of the H&S-Havron discussion prior to the work being done by H&S. Havron also gave H&S a change order for H&S to remove the roof for an additional $21,100. . . . This document does not contain a "pay when paid clause."

Under the specific fact situation, Havron would not be acting in good faith and would not be dealing fairly with H&S to deny H&S payment just because Havron had not been paid by [Dillard], especially when the contract "pay when paid" term was not shown to H&S until after the work was completed and after . . . Havron's knowledge regarding [Dillard's] claim for the damaged switchgear . . . . If H&S were not entitled to relief, then this would be another example of the old saying that "No good deed goes unpunished."

* * *

Havron . . . claims money due from [Dillard] based upon a quantum meruit theory. Quantum meruit serves as an equitable substitution for a contract claim that may allow a party to recover the reasonable value of certain goods and services it has provided. *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995). The elements of quantum meruit are as follows (citations omitted):

> (1) there must be no existing, enforceable contract between the parties covering the same subject

-5-

matter; (2) the party seeking recovery must prove that it provided valuable goods and services; (3) the party to be charged must have received the goods and services; (4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and (5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

In the case at bar, the court has determined there is no enforceable contract between [Dillard] and Havron. Further, Havron has proved that it, through its subcontractors, especially H&S, provided valuable services in performing the demolition work on the Bay 8 work. [Dillard], as the general contractor . . . received the services and benefitted therefrom. Also, there is no doubt that the parties expected [Dillard] to pay for these services. Indeed, the parties agreed upon a price of $63,100 but did not agree on the other parts of an agreement, specifically the scope of work. Finally, under the circumstances of this case, it would be unjust for [Dillard to] benefit from Havron's services without paying for such services.

The issues are how much money does [Dillard] owe Havron and whether any offset or credit for the damaged switchgear . . . should be allowed in this case. [Dillard] and Havron initially agreed on $63,100 as the value of the subcontract. Havron billed [Dillard] $28,000 for the demolition of the roof. Thus, Havron seeks a total of $91,100. Mr. Havron's testimony supported this amount. No proof has been presented showing that this amount is inappropriate. The court concludes that the only proof on the issue of amount substantiates a recovery by Havron against [Dillard] for $91,100.

. . . . [T]he court finds that Havron should . . . recover a portion of its attorney's fees from [Dillard], not under the Prompt Pay Act but under the indemnity claim.

-6-

The basis for indemnity is stated as follows:

> The right to indemnity rests upon the principle that everyone is responsible for the consequences of his own wrong, and if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former.

14 Tenn. Jur., *Indemnity*, § 8 (2009). Basically, Havron argues that if it is liable to H&S, then [Dillard] should indemnify Havron because [Dillard] was the cause of such liability.

\* \* \*

The court holds that Havron is entitled to indemnity from [Dillard]. It was [Dillard], as the general contractor, that was supposed to be in charge of the project. [Dillard] told Havron when and where to work. [Dillard] made the decision to allow [the owner] to withhold money from the contract price, instead of letting [the owner] make a claim against [the owner's] insurance. [Dillard] agreed to an inflated claim and deduction . . . . [Dillard], in effect, by giving [the owner] a "blank check," set up a self-fulfilling prophecy that its subs . . . would not get paid. Therefore, [Dillard] was responsible for Havron's non-payment of H&S because [Dillard] withheld payment from Havron. . . . Therefore, Havron should be indemnified by [Dillard] for the monies, over and above the base $63,100 that Havron owes H&S.

Counsel for Havron submitted an affidavit of time and services which totaled $67,545.08 with expenses. . . . The court does not find that Havron should recover all of its attorney's fee from [Dillard] for several reasons. First, Havron's attorney's fee represents additional services over and above its defense of the H&S . . . claim. Second, the court has determined Havron's recovery of attorney's fees against [Dillard] to be based upon indemnity. The following quotation seems appropriate:

[I]n a suit for indemnity, the indemnitte[e] [Havron] seeks a full recovery from the indemnitor [Dillard] for the former's legal liability to a third party [H&S]. *41 Am. Jur. 2d Indemnity* § 1 (1968).

*Denny v. Goodwin*, No. 89-325-II, 1990 Tenn. App. LEXIS 193 at *9 (March 23 1990).

Thus, because Havron owes H&S the sum of $23,385.52 for attorney's fees and expenses, Havron should be limited, under principles of indemnity, to recovering only $23,385.52 in attorney's fees and expenses from [Dillard].

* * *

There are many considerations that have gone into the court's decision. First, [the owner] was in a hurry and this "need for speed" was "passed down" the contracting line to [Dillard], Havron and others yet there was no printed demolition schedule. Second, [the owner] was behind the game in several ways. One, there is no evidence in the record that any [owner] or [Dillard] representative showed anyone the inside of the switchgear room, which was always locked. Two, [the owner] did not obtain a bid . . . to move the switchgear and transformer until December 5, 2007. This proposal was accepted on December 10, 2007. . . . By then, Sitton's employees were taking down the sandwich panels and getting ready to take down the switchgear room. . . . Third, neither [the owner] nor [Dillard] placed any warning signs, tapes or other notices or devices on the door to the switchgear room to warn . . . Havron and others about saving the switchgear inside the room. It was interesting to note that Sitton's employees removed the roof above and walls around the transformer but did not touch the transformer, as such transformer was specifically pointed out to Havron and Sitton as an item not to be touched. Fourth, [the owner] did not follow . . . specs by having the switchgear removed before demolition. . . . [The owner] changed the engineers' time frame by making removal of the switchgear occur after, not before, most of the demolition had already been accomplished. Fifth,

[the owner's] efforts to contract with H&[S] indicates that [the owner] was keeping control of the project, rather than [Dillard], who was allegedly the general contractor.

The court notes some of the same problems with [Dillard]. As Mr. Kemp said . . . to Mr. Havron, "we want you to start yesterday." . . . The scope of work should have been concretely staked out before the work began. This duty to detail the scope of work lies with the general contractor, not the subcontractor. Due to the time issues, Mr. Kemp decided that Havron should work first and be signed up second.

Dillard did not post any notices, warnings or any other instructions on the switchgear room to warn others of the need to save the switchgear and busway. . . . Worse yet, [Dillard] had a job superintendent on site: Bill Edgeman. . . .

There was testimony from several witnesses that Mr. Edgeman was present on site at Bay 8, when Sitton began the demolition of the switchgear room and its contents. However, Mr. Edgeman did not tell Sitton or his employees to refrain from going into the switchgear room, to stop their work, or anything else. . . . [Dillard] did not call Mr. Edgeman as a witness. Such creates an inference that his testimony would not have been helpful to [Dillard's] position . . . .

In addition to the construction issues, the court finds that [Dillard] agreed, without any fight or attempt to mitigate its loss, to pay whatever [the owner] wanted to replace the switchgear equipment and busway. The switchgear was initially purchased in 1957 or 1958 by [the owner's] predecessor . . . . [Witness] Berner saw the damaged switchgear . . and the replacement switchgear. He described the replacement switchgear as a "Cadillac" compared to the pre-existing equipment, which the court would refer to as a "Yugo." Mr. Berner described the many differences and advances between the damaged switchgear and the replacement switchgear. . . . The before and after values were not comparable or close in amounts.

From a business standpoint alone, one can see the good "customer relations" in [Dillard's] decision to let [the owner] get what it wanted. However, from [Dillard's] subcontractors' viewpoint, [Dillard] "hung them out to dry" and denied them any payment on the Bay 8 demolition project due to the "inflated" cost of the replacement equipment, compared to its pre-destruction value. [Dillard] came across, to the court, as being rather indifferent to the plight [of] its subcontractors, H&S in particular.

(Underlining in original; headings in original omitted.)

On competing motions to alter or amend, the trial court held that there was a written contract between H&S and Havron that allowed H&S to recover its attorney's fees from Havron under the Prompt Pay Act, but since there was no contract, written or otherwise, between Dillard and Havron, Havron could not recover attorney's fees under the Prompt Pay Act. However, it upheld its earlier award on the basis of indemnity:

The alternative theory for the allowance of attorney's fees, for both H&S and Havron, was indemnity. The leading case in Tennessee is ***Pullman Standard, Inc. v. Abex Corp***., 693 S.W.2d 336 (Tenn. 1985). The Tennessee Supreme Court held:

We are in agreement with the majority view that attorneys' fees are recoverable under an implied indemnity agreement in appropriate cases. We continue to adhere to the rule in Tennessee that attorneys' fees are not recoverable in the absence of a statute or contract specifically providing for such recovery, or a recognized ground of equity; however, we recognize an exception to that rule and hold that the right of indemnity which arises by operation of law, based upon the relationship of the parties, *see **Cohen v. Noel***, 165 Tenn. [1 Beeler] 600, 56 S.W.2d 744 (1933), includes the right to recover attorneys' fees and other litigation costs which have been incurred by the indemnitee in litigation with a third party.

***Id***. at 338.

Here, [Dillard] filed suit for a declaratory judgment that it owed Havron and H&S nothing and that the liens filed by Havron and H&S were invalid. Because [Dillard] voluntarily agreed to allow [the owner] an exorbitant credit against the money due . . . ., [Dillard] was thereby able to take the position that it did not have to pay its subcontractors because it did not get paid in full by [the owner]. When [Dillard] told Havron to fire Sitton and hire a replacement subcontractor, there is nothing in the record that supports any notice to Havron (or H&S) that [Dillard] would not pay for the work. If [Dillard] had told Havron, and if Havron had told H&S, that [Dillard] was not going to pay any money on the demolition project, then the court doubts that H&S would have agreed to do any work and Havron would have probably abandoned the project. Thus, [Dillard] would have had to pay any "new" contractor coming onto the site to complete the demolition work. H&S was such a "new" contractor.

* * *

In allowing Havron to collect from [Dillard] the amount of attorney's fees Havron is having to pay H&S, the court relies upon *[Estate of Wilson]v. Arlington Auto Sales*, 743 S.W.2d 923 (Tenn. Ct. App. 1987) and the general principles that:

> The right to indemnity rests upon the principle that everyone is responsible for the consequences of his own wrong, and, if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former.

(Some citations omitted.)

II.

The judgment in favor of H&S has now been satisfied. The only amounts at issue in this appeal are the $28,000 (for the demolition of the roof) and prejudgment interest awarded to Havron above and beyond the $63,100 awarded to H&S, and the attorney's fees –

-11-

Havron's – denied Havron. Specifically, Dillard raises two issues, as we have rephrased them:

>Whether the evidence preponderates against the quantum meruit award in favor of Havron.

>Whether the evidence preponderates against the trial court's denial of an offset for damage to the switchgear.

Havron raises a single issue which we have also restated:

>Whether the trial court erred in denying Havron its attorney's fees incurred in defense of the claims asserted by H&S.

### III.

A trial court's factual findings are reviewed *de novo* with a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. 13(d); ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001). When the trial court's decision is based on the credibility of witnesses, it will be accorded "great weight" on appellate review and will not be reversed absent clear and convincing evidence to the contrary. ***Machinery Sales Co. v. Diamondcut Forestry Prods***., 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002).

### IV.

### A.

Dillard's position as to the quantum meruit award is concisely stated in its brief as follows:

>Havron is not entitled to any recovery under a quantum meruit theory where it was simply a broker of subcontractors on the Project who provided no value or benefit to [the owner] or Dillard.

Having lost in the trial court and having now satisfied the judgment in favor of H&S, Dillard now takes the position that it and the owner received a benefit from the excellent work of H&S, but nothing from Havron. Dillard further states in its brief, that "Havron did not take down the roof, the structural steel, or the sandwich panels . . . ." Dillard also argues that

-12-

Havron did not even adequately supervise the work as proven by the damage to the switchgear.

Dillard furnishes no authority for the proposition that a party cannot recover for the value of work done by a subcontractor. It seems to us implicit in the reasons for the rule of quantum meruit that a contractor in the position of Havron who finds itself without an enforceable contract with its expected payor, Dillard, would be allowed to recover the value of services bestowed upon Dillard by Havron's subcontractors. "The most significant requirement for a recovery on quasi contract is that the enrichment . . . be unjust." **Paschall's, Inc. v. J.P.Dozier**, 407 S.W.2d 150, 155 (Tenn. 1966). The measure of recovery is not the "material and labor costs" of the plaintiff, but the "actual value of the . . . services" to the recipient. **Castelli**, 910 S.W.2d at 430, 427. In applying **Castelli** to the present case, the trial court stated, "there is no doubt that the parties expected [Dillard] to pay for these services." *See id*. at 427. The party to be charged, Dillard, received the services, regardless who provided them. *See id*. Also, it is clear from **Castelli**, that Havron is entitled to something for its efforts and is not limited to its expenditures for "material and labor costs." *Id*. at 430. We therefore hold that Havron was entitled to recover the value of the services H&S rendered, under the Havron/H&S contract, to Dillard and ultimately to the owner.

Dillard also argues that there was no proof of the value of the work performed and that the trial court simply based the award on the contract price. We can illustrate Dillard's argument by quoting an excerpt from the trial court's opinion:

> The issues are how much money does [Dillard] owe Havron and whether any offset or credit for the damaged switchgear . . . should be allowed in this case. [Dillard] and Havron initially agreed on $63,100 as the value of the subcontract. Havron billed [Dillard] $28,000 for the demolition of the roof. Thus, Havron seeks a total of $91,100. Mr. Havron's testimony supported this amount. No proof has been presented showing that this amount is inappropriate. The court concludes that the only proof on the issue of amount substantiates a recovery by Havron against [Dillard] for $91,100.

Dillard is correct that a quantum meruit award cannot be based solely on the price of an unenforceable contract. **Castelli**, 910 S.W.2d at 428; **Bauman v. Smith**, 499 S.W.2d 935, 939-40 (Tenn. Ct. App. 1972). However, Dillard's argument tries to stretch the facts and law farther than they will comfortably fit. "No one doubts . . . that the contract price or rate agreed upon by the parties is admissible . . . to show what is the reasonable value of the performance that the defendant has received." **Bauman**, 499 S.W.2d at 940. Also, "the

required proof may be an estimation of the value of the goods and services." ***Castelli***, 910 S.W.2d at 428. As stated in ***Nations Rent of Tennessee, Inc. v. Lange***, M2001-02368-COA-R3-CV, 2002 WL 31467882 (Tenn. Ct. App. M.S., filed Nov. 6, 2002):

> The reasonable value of goods and services may be proven in several ways. The party seeking to recover in quantum meruit can explain the method used to arrive at a base fee and markup. Additionally, proof as to reasonable value can be obtained from other professionals or experienced workers in that field.

*Id*. at *2(citations omitted).

Our *de novo* review of the record convinces us that the trial court was aware of the elements of quantum meruit and the proper measure of recovery and properly analyzed the proof under the law as set forth above. A former employee of the property owner whose job included evaluating bids of various contractors testified that the demolition work on Bay 8 was worth approximately $93,000 to the owner because that is what it paid Dillard for the work. The owner of Havron testified that based on his involvement at the job site and his 18 years of experience in demolition, the value of the work performed was $91,100 and "probably more." He testified that a fair price for removal of the roof alone was $28,000. In addition to his knowledge from his general experience, Mr. Havron relied upon the fact that the "expedited" nature of the work, the height of the roof, the labor-intensive nature of the work, and the need for specialized equipment were factors to consider in setting the reasonable value of the work. The trial court accurately noted that no evidence was offered in opposition to the value assigned by Havron. The best Dillard can come up with on appeal is that Havron's testimony coincides with the contract prices discussed. Dillard's attempt falls far short of convincing us that the evidence preponderates against the trial court's award of $91,100 to Havron for the demolition work.

B.

Dillard also argues that the trial court erred in not allowing it a set-off for the value of the electrical equipment that Sitton damaged. This challenge is premised upon the fact that Havron was familiar with the plans and that the plans called for the equipment to be removed by "others." Dillard has furnished no legal authority as to how this requires a result different from what the trial court reached. We have quoted at length above from the trial court's opinion and find no need to print those quotes a second time. For the purpose of our present analysis, it is sufficient to state that we believe the trial court understood Dillard's position but found that the owner's and Dillard's actions taken to serve their "need for speed" placed the responsibility for the damage to the electrical equipment at their feet. The trial

-14-

court also found that in simply agreeing to a "Cadillac" replacement while spurning any offer by Havron to help find a replacement, Dillard inflated the claim of damages and failed to mitigate the damages. The evidence does not preponderate against the trial court's findings. We hold that there was no error in refusing Dillard a credit or an offset for the value of the damaged switchgear.

C.

We turn now to Havron's argument that the trial court erred in failing to award the attorney's fees and expenses incurred by Havron in defending against the claims of H&S. Before commencing our analysis, we note that Dillard does not challenge the $23,385.52 awarded to Havron for indemnification against the attorney's fees incurred by and awarded to H&S. Havron argues that having gone as far as finding an obligation on the part of Dillard to indemnify, the court was required, under *Pullman*, to take the additional step of finding an obligation to make Havron whole by paying also the fees and expenses Havron incurred defending against H&S. We agree with Havron that the holding of *Pullman*, "in appropriate cases" allows a party in its position to recover the fees and expenses it incurred in defending against a claim brought by a third party. 693 S.W.2d at 338. We do not agree that *Pullman* requires a different result than the one reached by the trial court in this case.

It is important to understand that *Pullman* was before the Supreme Court on an interlocutory appeal from the denial of a motion to dismiss. *Id*. at 337. In earlier lawsuits, both Pullman Standard, as the manufacturer of a railroad car, and Abex Corp., as the manufacturer of a wheel fitted on the car, had been sued for damages caused by a massive train derailment and explosion. *Id*. Abex settled most of the cases without Pullman paying anything. *Id*. Pullman then filed an action that ultimately made it to the Supreme Court. Pullman alleged that "no act or omission of its own contributed to the derailment" even though the earlier lawsuits had contained allegations that Pullman and Abex were both at fault. *Id*. at 338. The High Court was required to take Pullman's allegations of innocence at face value. *Id*. The Court held that "the indemnitee's actual wrongdoing rather than allegations of wrongdoing [in the earlier cases] . . . should determine the indemnitee's rights. . . ." *Id*. at 339.

In the present case, we do not have mere allegations that Havron was complicit in the wrongdoing; we have a finding of the trial court supported by a preponderance of the evidence. The trial court found that "Havron would not be acting in good faith and would not be dealing fairly with H&S to deny H&S payment just because Havron had not been paid by [Dillard], especially when the contract 'pay when paid' term was not shown to H&S until after the work was completed and after . . . Havron's knowledge regarding [Dillard's] claim for the damaged switchgear . . . ." The trial court found Havron in violation of the Prompt

-15-

Pay Act. That was the basis for the award to H&S which has not been challenged. In light of these findings, and after considering the "principles of indemnity" the trial court found that Havron "should [not] recover all of its attorney's fees from [Dillard]"; "Havron should be limited, under principles of indemnity, to recovering only" those fees and expenses paid to H&S. We have reviewed this ultimate finding *de novo*, as an application of law to the facts[2], and find no error in the trial court's conclusion. We hold that the trial court did not err in refusing to award Havron the expenses it incurred in defending the claims filed against it by H&S.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to appellants Dillard Construction, Inc., and International Fidelity Insurance Company. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for the collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE

_____

[2]The application of law to the facts of a case is treated as a question of law to be reviewed de novo. *Jaeger v. Civil Service Com'n of Metropolitan Government of Nashville and Davidson County*, No. M2007-02451-COA-R3-CV, 2009 WL 248266, at *4(Tenn. Ct. App. M.S., filed Feb. 2, 2009)(*citing Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Bd.,* 907 S.W.2d 807, 810 (Tenn.1995)).